# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN HUSTED, | ) 1:09-cv-00409 GSA |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Karen Husted ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 4 & 10.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on or about December 22, 2004, alleging disability beginning December 15, 2004. AR 119-121, 376-378. Her application was denied initially and on reconsideration, thereafter Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 50-54, 57-64. ALJ James P. Berry held a hearing on January 24, 2007, and issued an order denying benefits on March 20, 2007. AR 35-45. Plaintiff requested a review of the hearing and the Appeals Council remanded the matter for further proceedings. AR 87-97. Thereafter, ALJ Berry held a hearing on July 23, 2008, and issued an order denying benefits on September 29, 2008. AR 13-24. On January 9, 2009, the Appeals Council denied review. AR 8-11.

**Hearing Testimony**[3]

ALJ Berry held a hearing on January 24, 2007, in Fresno, California. Plaintiff appeared and testified. Plaintiff was represented by attorney Robert Christenson. Vocational Expert ("VE") Cheryl Chandler also testified. AR 400-424.

ALJ Berry held another hearing on July 23, 2008, in Fresno, California. Plaintiff appeared and testified and was again represented by attorney Robert Christenson. VE Thomas Dachelet also testified. AR 425-450.

Plaintiff was born June 18, 1978. She is now 30 years old. AR 428. Plaintiff's height is 5' 4" and her weight is 254 pounds. This is normal weight for her. AR 404. She lives with her husband and two children, ages 10 and 12. AR 442-443. Plaintiff completed the twelfth grade. She can speak and understand English. AR 429.

Plaintiff's was last employed as a cashier at Wal-Mart. The position was seasonal, approximately two to three months for the Christmas holiday. During this time she worked approximately five to six hours per day, five to six days per week. AR 429-430. Prior to the

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Portions of the January 24, 2007 hearing testimony duplicative of the July 23, 2008 hearing testimony have been omitted.

2

cashier position, Plaintiff worked full-time as a nurse assistant. AR 430. She held one position for four months in 2001 and one position for four months from 2003 to 2004. She has no nursing license or certificate.[4] AR 405-406. Prior to the nursing assistant position, Plaintiff did some cashiering and also worked full-time for a "couple" seasons, approximately six months each, at two different packing houses, packing tomatoes. AR 430-431. This is the extent of her work history dating back to 1993. AR 431.

When ALJ Berry inquired about in-home health care earnings that indicate Plaintiff earned wages during 2004 and 2005, Plaintiff indicated that she did not do this work, that another individual used her name, and that the record should have been updated to reflect this information. AR 431-432.

When asked what is keeping Plaintiff from working, she cited back pain, knee pain, and an injury to her left foot. AR 432. The back pain is in her lumbar spine and goes down to her hips. AR 409. X-rays taken approximately six months ago showed degenerative arthritis in her lumbar spine. AR 419. Plaintiff explained that her foot injury occurred when she was four years old, that she has since developed arthritis in her foot, and has had progressively more trouble walking as a result. AR 432. Plaintiff also identified pain in her right shoulder due to a rotator cuff injury. She explained that she cannot lift her right arm above her chest without it hurting. AR 433. Plaintiff's prescribed medications also keep her from working because they make her drowsy. AR 408.

Plaintiff currently goes to the Family Healthcare Network for medical treatment and prescription medication, but Dr. Wadhwani has treated her in the past. AR 434, 444. Plaintiff can lift and carry approximately 10 pounds with her left arm and approximately two pounds with her right. She uses her left hand to perform basic tasks such as eating because it hurts her right

---

[4] Plaintiff subsequently testified on July 23, 2008 that she had her Certified Nursing Assistant ("CNA") license and worked as a CNA. AR 430.

shoulder to grip things with her right hand. AR 434-435. There is nothing wrong with Plaintiff's right hand itself.[5] AR 435-436.

Plaintiff can stand for approximately 5 to 10 minutes before needing to sit down and can sit for approximately 20 minutes before needing to stand or lie down. She lies down for five to six hours in an eight-hour time period. AR 412. Plaintiff can walk approximately one block, but requires a cane to do so. AR 437. She has been using a cane for approximately one year, at the direction of Dr. Wadhwani. AR 408-409, 432. She must rest approximately every 15 or 20 minutes for approximately 10 minutes. AR 438. Plaintiff does not function very well approximately every other day. AR 439.

Plaintiff is currently taking Vicodin, Soma, Motrin, Albuterol, Advair, and Loratadine. AR 413. She has not participated in physical therapy. AR 419. The medications are giving her some relief from the pain. AR 417. She takes Vicodin three times per day: in the morning, afternoon, and evening. The Vicodin makes her fall asleep for one to two hours, approximately one half hour to an hour after she takes it. AR 440-441. Plaintiff takes Motrin for inflammation and has an inhaler for asthma. She experiences asthma attacks one or two times per week. AR 441.

Plaintiff spends "99 percent" of her time inside the home, and mostly plays board games with her children. AR 442, 444. She does not cook meals, do laundry, or dress herself. Her husband and children perform these tasks. AR 442-444. Plaintiff's mother-in-law buys groceries and school supplies. Plaintiff's husband works as a chemical hauler. AR 445. Plaintiff drives her children to and from school and drives herself to doctor's appointments, but must stop the car often because of back pain.[6] AR 412-413, 416. She drove to the hearing on July 23, 2008. AR 443.

---

[5] Plaintiff previously testified on January 24, 2007 that a nerve test six months prior showed she has carpal tunnel syndrome in her right hand. She was wearing a brace on her right hand at the January 24, 2007 hearing. AR 408.

[6] Plaintiff subsequently testified on July 23, 2008 that she drives, but only to necessary appointments. AR 443.

4

1   VE Dachelet testified that Plaintiff's previous work as a cashier was considered a light
2   physical demand, unskilled. Nursing assistant is medium, semi-skilled. Packing house work is
3   light, semi-skilled. AR 446. VE Dachelet was asked to consider a hypothetical individual of
4   Plaintiff's age, education, vocational training, and relevant work experience, who has a
5   combination of severe impairments and retains the residual functional capacity ("RFC") to lift
6   and carry 20 pounds occasionally and 10 pounds frequently, stand and walk two hours each per
7   day, sit six hours per day, and occasionally climb. He indicated that this hypothetical individual
8   could not perform any of Plaintiff's past work. AR 447.

9   VE Dachelet indicated that this same hypothetical individual could perform other jobs
10  that exist in the national economy, specifically all sedentary, unskilled jobs. AR 447. He offered
11  examples including: ampule sealer, 1,933 jobs in California; semiconductor dye loader, 5,406
12  jobs in California; and weight tester, 1,800 jobs in California. A total of 82,287 sedentary
13  unskilled jobs exist in California. Approximately 10 times this number of jobs exist in the
14  national economy. AR 447-448.

15  VE Dachelet was asked to consider a second hypothetical individual, of Plaintiff's age,
16  education, vocational training, and relevant work experience, who has a combination of severe
17  impairments and retains the RFC to lift and carry 10 pounds maximum, stand, walk, and sit less
18  than four hours, must use a cane to walk, must take 10-minute rest breaks every 15 to 20 minutes,
19  and would miss approximately three days per week of work. VE Dachelet indicated that such an
20  individual could not perform any of Plaintiff's past work. AR 448.

21  VE Dachelet was asked to consider a third hypothetical worker, as posed by Plaintiff's
22  counsel, of Plaintiff's age, education, vocational training, and relevant work experience, who has
23  a combination of severe impairments and retains the RFC to lift and carry 10 pounds maximum,
24  sit less than two hours, stand and walk less than two hours, must use a cane to walk, must take
25  10-minute rest breaks every 15 to 20 minutes, would miss approximately three days per week of
26  work, and that frequently experiences pain, fatigue, or other symptoms severe enough to interfere
27  with attention and concentration. VE Dachelet indicated that such an individual could not
28  perform any work that is normally found in the world of work. AR 448-449.

**Medical Record**

The entire medical record was reviewed by the Court. A summary of the reports and treatment notes is provided below.

### *Dr. Hefflebower*

Plaintiff was treated by J.R. Hefflebower, D.P.M., from March 26, 1998 to May 13, 1999. On four occasions Plaintiff was seen for injury, discomfort, or muscle cramping in her left foot. None of the injuries were serious. Dr. Hefflebower noted evidence of a prior surgery, which Plaintiff indicated occurred following a lawnmower accident at the age of four. AR 260-263.

### *San Joaquin Prime Care Medical*

Plaintiff was treated at San Joaquin Prime Care Medical from December 13, 2004 to May 22, 2006. Stefan Pentschev, M.D. was her treating physician. Plaintiff was routinely prescribed medication for asthma, advised to lose weight and stop smoking, and was treated for routine health complaints. These records also document Plaintiff's complaints of pain in her left foot and prescriptions for medication to treat her symptoms. AR 206-218.

On March 12, 2005, Plaintiff was seen for a sore left knee. The treating clinician determined that Plaintiff had tendonitis in her left knee and also noted that Plaintiff's Body Mass Index ("BMI") was 42. AR 214.

After March 2005, Plaintiff also began complaining of pain in her neck, shoulders, lower back, hips, and whole body. She also complained of headaches. AR 219-259.

On March 28, 2006, Plaintiff was seen for pain in her lower back and right hip after washing her van. AR 227.

### *Sequoia Foot Care Group*

On December 21, 2004, Plaintiff was seen by Michael Boyd, D.P.M., at the Sequoia Foot Care Group for pain in her left foot. Dr. Boyd reported moderate discomfort, evidence of prior scarring, and irregular X-rays indicating hypertrophic bones in the left foot. Dr. Boyd diagnosed the condition as pain possibly due to scar tissue entrapment of nerve and/or osseous injury, and prescribed no treatment. AR 187-191.

*Dr. Frederick R. Young*

On March 25, 2005, Plaintiff was evaluated by Frederick R. Young, M.D., an orthopedist, for pain in her left foot. Dr. Young noted that Plaintiff's left foot had significant scarring and limited range of motion. He noted that Plaintiff had normal range of motion at her neck, upper extremities, back, hips, knees, and ankles, and that her gait showed equal stance and no appreciable limp. No spasm was noted in Plaintiff's neck, upper extremities, or back. Dr. Young also noted morbid obesity. He stated that Plaintiff would be restricted in her ability to stand and walk for prolonged periods of time and a "desk type" job would be medically appropriate. AR 192-193.

*Dr. Boota S. Chahil*

On December 7, 2005, Plaintiff saw Boota S. Chahil, M.D., neurologist, for hand numbness and pain. Dr. Chahil performed an examination of both upper extremities, including motor and sensory nerve conduction studies. All results were normal and there was no evidence of carpal tunnel syndrome, polyneuropathy, or cervical radiculopathy. AR 294.

*Dr. J. R. Lee*

On February 10, 2006, Plaintiff was seen by J.R. Lee, M.D. in the orthopedic clinic for pain in her foot and ankle. An X-ray of her ankle revealed a 2.5 centimeter evulsed fracture fragment involving the plantar surface of the foot at the level of the proximal fifth metatarsal, representing a previous traumatic injury. An X-ray of her foot revealed a large evulsion fracture. Dr. Lee noted that Plaintiff is able to walk with full weight bearing and her ankle has full motion. Dr. Lee concluded that Plaintiff has arthritis in her foot, which will get progressively worse, but advised against surgical arthrodesis. Plaintiff was to return on an as needed basis. AR 295-296.

*Rivas Smith Imaging*

Plaintiff was treated at Rivas Smith Imaging from July 14, 2003 to August 16, 2006. AR 287-293.

On July 14, 2003, a radiological report regarding the lumbar spine showed Plaintiff had lumbosacral instability, mild facet joint osteoarthritic changes between L3-4, L4-5, and L5-S1, and narrowed disc space between L5-S1. AR 293.

On August 15, 2005, an X-ray of the left foot showed Plaintiff had a minimal degree of soft tissue swelling and no gross fracture in her left foot. AR 254.

On August 24, 2005, a radiological report regarding the cervical and thoracic spine showed Plaintiff had early degenerative arthritis of the cervical spine with muscular spasm and degenerative arthritis of the thoracic spine. Otherwise, the findings were unremarkable. AR 292.

On October 10, 2005, CT scan of the cervical spine revealed mild bulging in discs C2-C6, yet no disc herniations or spinal canal stenosis was noted. The Plaintiff's body habitus precluded adequate evaluation of the C6-7 and C7-T1 levels. AR 291.

On March 3, 2006, X-rays of the left knee and left shoulder revealed no evidence of fracture or dislocation or affected joints. The findings were normal. AR 290.

On June 23, 2006, a radiological report of the lumbar spine revealed an incomplete lumbarization of S1 in the left side. No evidence of a fracture was found. AR 289.

On August 16, 2006, an MRI of the lumbar spine concluded no spinal stenosis was present. Disk narrowing was noted at L5-S1, but the findings were otherwise unremarkable. AR 287-288.

*Lindsay Urgent Care*

Plaintiff was treated at Lindsay Urgent Care from January 27, 2006 to October 13, 2006, primarily for pain in her shoulder, back, pelvis, and knees. She was also treated for headaches. AR 264-281, 306-318.

On March 7, 2006, an examination revealed full range of motion in Plaintiff's extremities. AR 276.

On August 29, 2006, Plaintiff was seen for a medication refill. Notes indicate that Plaintiff is going on a trip for one week. AR 318.

On October 13, 2006, Plaintiff was seen for pain in her left shoulder. AR 306.

*Assessment by Dr. Wadhwani*

On December 18, 2006, Suneel Wadhwani, M.D. and physician's assistant Heidi Hutchins completed a RFC questionnaire. The diagnosis included pain in Plaintiff's lower back, cervical spine, and left shoulder, mainly due to osteoarthritis, and radiculopathy of the cervical

and thoracic spine.  It was noted that Plaintiff's condition is controlled by Soma and Vicodin, that Soma causes drowsiness but is taken before bed time, and that Vicodin "doesn't really cause drowsiness."  AR 282-283.

In response to a question concerning the patient's pain, it was noted that Plaintiff's experience of pain and fatigue frequently interferes with attention and concentration needed to perform simple work tasks and that Plaintiff can maintain attention and concentration for five minutes at one time.  Further, it was noted that Plaintiff is incapable of even low stress jobs due to high levels of pain.  She can walk one half block without pain or rest, can sit or stand for 10 minutes at one time, and can sit, stand, or walk less than two hours in an eight-hour day.  In addition, she must use a cane to stand or walk.  AR 283-285.

Asked to assess the patient's abilities regarding a competitive work situation and ability to perform various activities, it was noted that Plaintiff can rarely lift or carry less than 10 pounds, can never lift or carry 10 pounds or more, can never twist, stoop, crouch, or climb, and has significant limitations in repetitive reaching, handling, and fingering.  It was further noted that Plaintiff cannot at any time during a work day, use her right hand to grasp, turn or twist an object, or use her fingers for fine manipulation, however she can reach overhead 100 percent of the time with either arm.  Finally, it was noted that Plaintiff is likely to be absent from work more than four days per month due to her impairments or treatments.  AR 285-286.

### *Sequoia Family Medical Center*

Plaintiff was treated at Sequoia Family Medical Center from November 15, 2006 to May 25, 2007, primarily for pain in her shoulders, back, and pelvis.  Dr. Wadhwani was her treating physician.[7]  AR 297-305, 319-336.

On February 28, 2007, a radiological report showed Plaintiff had a partial lumbarization of vertebral body S1.  Otherwise, the findings were normal.  AR 328-329.

On March 16, 2007, an examination revealed full range of motion in Plaintiff's extremities.  AR 323.

---

[7] Dr. Wadhwani treated Plaintiff at Lindsay Urgent Care and, subsequently, at Sequoia Family Medical Center.

On April 23, 2007, Plaintiff was seen for pain in her left shoulder. Notes indicate that Plaintiff was unable to raise her right shoulder more than 30 degrees on her own. AR 320.

### *Family Health Care Network*

Plaintiff was treated at Family Health Care Network from May 22, 2007 to May 20, 2008, primarily for pain in her left shoulder, back, and right and left knees. Christopher Kolker, M.D. was Plaintiff's primary treating physician. She was also seen by Francis Cunanan, M.D. AR 337-375.

On May 22, 2007, Plaintiff was seen for asthma and back pain. The doctor's objective findings note a "[f]airly benign exam" with mild weakness and slight impact to her reflexes in the knees and ankles. Dr. Kolker noted that Plaintiff refused physical therapy, chiropractic treatment, and other therapeutic modalities. AR 358.

On July 2, 2007, Plaintiff underwent X-rays for chronic low back pain. The X-rays indicated no appreciable bone or joint pathology. AR 354.

On July 28, 2007, Plaintiff was seen for back pain and requested refills of Vicodin. Dr. Kolker speculated on her sincerity, noting that there are no signs of addiction but that there are rumors. Dr. Kolker further noted that he intended to conduct a urine test, and possibly refrain from prescribing Plaintiff Vicodin if the test is "too clean." AR 347.

On August 21, 2007, Plaintiff complained of depression. Dr. Kolker ordered a urine test with no opiate cutoff and noted that Plaintiff refused psychology. No objective findings are made regarding depression, but Dr. Kolker assessed a major depressive disorder. AR 344.

On July 10, July 28, and August 21, 2007, Plaintiff underwent drug screening tests. All three tests were negative for opiates, subject to a cutoff. AR 343, 346, 351.

On October 22, 2007, Plaintiff was treated for bronchial asthma, chronic lower back pain, and depression. Norco, Soma, and Tramadol were prescribed for pain and Prozac and Amitriptyline were prescribed for depression. Dr. Cunanan noted that Plaintiff was obese, weighing 267.2 pounds. AR 340.

On October 24, 2007, a physical therapy progress note indicates that Plaintiff completed three sessions and never returned. AR 339.

On January 28, 2008, Plaintiff underwent an MRI for complaints of pain in her right shoulder. The MRI indicated no abnormalities. In particular, the rotator cuff and labrum were intact. AR 369-370.

On May 2, 2008, Plaintiff was treated for asthma and for complaints of pain in her back and right knee. Vicodin was prescribed. AR 373.

On May 20, 2008, Plaintiff was treated for complaints of left knee pain. Medications were prescribed. AR 372.

### *State Agency RFC Assessment*s

On May 6, 2005, state agency physician Brian Ginsburg, M.D. completed a Physical RFC Assessment. Dr. Ginsburg noted that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for at least two hours per day, and sit for about six hours per day, but could not use frequent foot controls. The doctor also noted that Plaintiff could occasionally climb and could frequently balance, stoop, kneel, crouch, and crawl. Dr. Ginsburg noted no manipulative, visual, communicative, or environmental limitations. Dr. Ginsburg recommended a sedentary residual functional capacity. AR 195-203.

On August 18, 2005, state agency physician Murray Mitts, M.D. affirmed, on reconsideration, the initial RFC assessment. He noted that the lack of evidence of medical necessity for an assistive device precludes a more restrictive RFC. AR 204-205.

### **ALJ's Findings**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2004, and had the severe impairments of a left foot deformity, morbid obesity, arthritis of the cervical and thoracic spine, and partial sacralization of S1. AR 18. Nonetheless, the ALJ determined that the severe impairments did not meet or exceed one of the listed impairments. AR 19.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the RFC to perform a narrow range of sedentary work. She can occasionally lift up to 20 pounds, frequently lift and carry up to 10 pounds, sit for 6 hours and stand or walk for 2 hours in an 8-hour day, and occasionally climb. AR 19. The ALJ determined that Plaintiff was unable to

perform any past relevant work. The ALJ further determined that, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy. AR 16-24.

Here, Plaintiff argues that: (1) the ALJ erred in failing to adopt the opinion of the treating physician, Dr. Wadhwani; (2) the ALJ failed to consider the side effects from the Plaintiff's medications on her ability to work; and (3) the ALJ erred in failing to find the Plaintiff credible.

## DISCUSSION

### A.   *Opinion of Treating Physician, Dr. Wadhwani*

Plaintiff contends that the ALJ erred in failing to adopt the opinion of a treating physician, Dr. Wadhwani, and the treating PAC, Heidi Hutchins. Defendant contends that the ALJ properly evaluated the opinion evidence.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

Here, the ALJ gave substantial weight to the opinion of examining physician Dr. Young and weight to the treatment evidence from Dr. Pentschev, Sequoia Family Medical Center, Lindsay Urgent Care Clinic, and Family Healthcare Network. The ALJ gave little weight to the RFC assessment by treating physician Dr. Wadhwani. AR 21. Thus, the burden is on the ALJ to provide specific and legitimate reasons for this weighting, supported by substantial evidence in the record. *Lester v. Chater*, 31 F.3d at 830. Dr. Wadhwani's assessment notes that Plaintiff can sit or stand not more than 10 minutes at one time, can sit and stand or walk less than two hours in an eight-hour working day, and has zero percent use of her right hand and fingers to grasp, turn, twist, and manipulate. AR 282-286. The ALJ found this assessment to be contradicted by the opinions of examining physician Dr. Young and state agency consulting physicians Drs. Ginsburg and Mitts, who determined that a sedentary job would be medically appropriate for the Plaintiff. AR 192-193, 195-205.

Further, the ALJ states that Plaintiff's limitations, as reported by Dr. Wadhwani, are contradicted by other medical evidence. AR 21. In December 2005, Dr. Cahill tested both upper extremities and found no evidence of carpal tunnel syndrome. AR 21; see also AR 294. A report of Plaintiff's annual physical examination in March 2007, signed by Dr. Wadhwani, indicates full range of motion in her extremities.[8] AR 22; see also AR 323. Repeated radiological studies showed no spinal stenosis, a normal left knee and shoulder, only mild spinal arthritis, and partial lumbarization of the S1 vertebra. AR 21-22; see also AR 287-293.

The ALJ also states that Dr. Wadhwani's assessment appears to be an accommodation to the Plaintiff and reflects an uncritical acceptance of her complaints. AR 21. Prior to the 2006 assessment, Plaintiff had not sought treatment from Dr. Wadhwani for pain in her right shoulder

---

[8] The court notes that a report of Plaintiff's annual physical examination in March 2006 also indicates full range of motion in her extremities. AR 276.

and the records do not indicate any limitation on the Plaintiff's use of her upper right extremity. AR 21; see also AR 277-336.

The contradictions of Dr. Wadhwani's December 2006 assessment to examining and consulting medical opinions and to treatment evidence in the record constitute specific and legitimate reasons for the ALJ affording little weight to Dr. Wadhwani's assessment.

The Court is mindful of the recent decision in *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), where the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. However, where the treating physician's opinion is not supported in the first instance, as here, *Orn* is not instructive.

Plaintiff contends that degenerative arthritis of the cervical and thoracic spine and incomplete sacralization of S1 support a limitation of the upper extremities. The ALJ's findings of degenerative arthritis and partial sacralization are consistent with the medical evidence in the record, yet Plaintiff offers no objective medical evidence relative to a limitation of the upper extremities. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Plaintiff also contends that the signatures of physician's assistant Heidi Hutchins and Dr. Wadhwani on the December 2006 assessment are different. It is possible, as the ALJ states, that as supervising physician Dr. Wadhwani did not see or approve the document. Nevertheless, construing the facts in the light most favorable to the Plaintiff, and assuming Dr. Wadhwani had full knowledge of and approved the assessment, the ALJ is not precluded from assigning it little weight for the reasons discussed above.

In sum, the ALJ did not err in failing to adopt the opinion of treating physician Dr. Wadhwani.

### B.     *Plaintiff's Side Effects of Prescribed Medication*

Plaintiff contends that the ALJ erred in failing to discuss the side effects from her many medications on her ability to work. Defendant contends that Plaintiff provided no credible evidence of such side effects.

There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider medication side effects. The first approach requires that an ALJ consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds). An ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. *Varney*, 846 F.2d at 585.

The second line of cases has distinguished *Varney* and has held that in order for an ALJ's failure to discuss medication side effects to be in error, the side effects must be a contributing factor in a claimant's inability to work. *See*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (no error in a question to a vocational expert that did not include information about side effects because "[t]here were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (failure to expressly address medication side effects is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work).

Here, Plaintiff testified that she takes Vicodin three times per day, after which she falls asleep for one to two hours. AR 439-441. However, there is no objective medical evidence in the record that documents the occurrence of these side effects. Notably, Plaintiff's own physician, Dr. Wadhwani, stated that Vicodin "doesn't really cause drowsiness." He also stated that "Soma causes drowsiness but [it is to be] taken before bedtime." AR 283. A review of the other medical evidence available fails to support Plaintiff's claim.

*Bayliss v. Barnhart*, 427 F.3d 1217 states that "preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." Thus, the ALJ did not err in failing to discuss the side effects testified to by Plaintiff because the ALJ determined that they were unsupported by the medical evidence.

In sum, Plaintiff has failed to cite to any medical evidence demonstrating that she suffered adverse side effects from her medication. Her subjective testimony is insufficient. The ALJ did not err.

### C. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in failing to find her credible. Defendant contends that the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility.

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ found that Plaintiff had four severe impairments: left foot deformity, morbid obesity, arthritis of the cervical and thoracic spine, and partial sacralization of S1. AR 18. The ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce only some of the alleged symptoms and that [Plaintiff's] statements concerning the intensity, persistence and limited effects of these symptoms are not entirely credible." AR 22. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made several credibility findings. He noted that Plaintiff was less than candid when changing physicians because she received double prescriptions for several months. AR 22. The ALJ also noted that Plaintiff's treating physician, Dr. Kolker, speculated on her sincerity when she asked for Vicodin refills after a clean drug screen. AR 22; see also AR 347. The ALJ further found (1) Plaintiff was inconsistent in her representations about her shoulder (AR 22-23; see also AR 320, 323, 353); (2) Plaintiff refused other modalities of treatment such as physical therapy and chiropractic treatment (AR 23; see also AR 358); (3) Plaintiff's daily activities are inconsistent with the limitations she alleges (AR 23; see also AR 227, 318, 443); and (4) Plaintiff has a minimal work history (AR 23; see also AR 429-431).

1   These findings are not general and are supported by evidence in the record.  Thus, the ALJ's
2   findings provided clear and convincing reasons for rejecting Plaintiff's testimony as not credible.
3         Plaintiff contends that her credibility is supported by the consistency between her
4   testimony and the assessment of Dr. Wadhwani.  Because Dr. Wadhwani's assessment is
5   unsupported by any other objective medical evidence in the record, and determined by the ALJ to
6   be an uncritical acceptance of Plaintiff's subjective complaints, Plaintiff's argument in
7   unpersuasive.
8         Plaintiff further contends that her negative drug screens do not conclusively indicate that
9   she was not taking her pain medication.  Dr. Kolker stated that in order to determine whether or
10  not Plaintiff was taking her pain medication, he would need to re-run the drug screen with no
11  opiate cutoff.  AR 344.  However, it appears that all three drug screens were run with an opiate
12  cutoff level.  AR 343, 346, 351.  Construing the facts in the light most favorable to the Plaintiff,
13  and assuming she was taking all of her pain medications as prescribed, the ALJ's other clear and
14  convincing reasons for rejecting Plaintiff's testimony as not credible still stand.
15        In sum, the ALJ did not err in failing to find the Plaintiff credible because the ALJ gave
16  clear and convincing reasons for finding the Plaintiff not credible.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Karen Husted.

IT IS SO ORDERED.

Dated:   **June 1, 2010**             /s/ **Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE